THE PEOPLE *ex rel.* Kochersperger, County Treasurer,

*v.*

THE BAPTIST THEOLOGICAL UNION.

*Opinion filed February 14, 1898.*

TAXES—*what not a forfeiture of religious society's exemption from taxation.* A society incorporated to establish an institution for theological instruction does not forfeit its exemption from taxation, under its charter, by exchanging its quarters for rooms at a university and being styled "The Divinity Department," where it retains its corporate existence, appoints the instructors in the divinity department, prescribes their duties, pays their salaries, directs the course of instruction and pays the expenses of the school from its own income.

APPEAL from the County Court of Cook county; the Hon. R. W. S. WHEATLEY, Judge, presiding.

WILLIAM F. STRUCKMANN, Assistant County Attorney, (ROBERT S. ILES, and FRANK L. SHEPARD, of counsel,) for appellant.

HOLDEN & BUZZELL, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

But a single question is here presented, viz., whether the property of the appellee, the Baptist Theological Union, is exempt from taxation.

The appellee corporation was created by an act of the General Assembly of this State entitled "An act to incorporate the Baptist Theological Union," in force July 16, 1865. Section 7 of the act is as follows: "The property, real and personal, belonging to said corporation, at any and all times hereafter, shall be free and exempt from all taxation and assessments, special or general, for any and all purposes whatever."

It was held by a bare majority of this court the decision of the Supreme Court of the United States, that

the exemption of the property of the appellee corpora-
tion by the legislative power of the State in its charter
is binding as a contract, should be accepted as the law
with relation to said exemption clause. (*People ex rel.* v.
*Baptist Theological Union*, 95 Ill. 561.) Appellant accepts
this decision as an adjudication of the question of the
legality of the exemption provision, but insists the union
has ceased to serve the purposes for which it was cre-
ated, and has devoted its property to other than the
corporate uses contemplated by its charter, and that for
that reason it cannot avail itself of the benefit of the
provisions of its charter exempting its property from
taxation.

The second section of the act incorporating the ap-
pellee union is as follows: "The object of this act of
incorporation shall be the founding, endowment, support
and direction of an institution for theological instruc-
tion, to be styled 'The Chicago Baptist Theological Insti-
tute.'" And section 6, among other things, provides as
follows: "The board is charged with the superintendence
and government of the institute, and shall have power
to select a president, and, in its discretion, a vice-presi-
dent thereof, and all necessary professors, tutors and
other instructors, and to prescribe the duties and fix the
salaries of each, and to fix the rates of tuition and terms
of admission to the institute, and may prescribe the
courses of study, and shall maintain discipline in the
institute."

It is urged by the appellant, it appeared from the
evidence an arrangement had been entered into by and
between the appellee union and the University of Chicago
by which the union was merged in the university, and
became and was, on the first day of May, 1896,—the date
of the assessment of the property for taxation,—a mere
branch of the university, and that it had lost its separate
corporate existence and ceased to serve the purpose and
object of its creation. We are inclined to agree with the

county court that the evidence did not sustain the view
expressed by the appellant. It did appear the Theolog-
ical Union occupied rooms provided by the university,
wherein the pupils' and students of the union were as-
sembled to receive instruction, and that the university
furnished dormitories for the use of such students, and
that such school was known and called "The Divinity
Department" of the university. It, however, appeared
the union furnished to the university a building belong-
ing to it in exchange for the rooms and apartments in
the building of the university, and that it maintained its
corporate existence, appointed the professors, tutors and
teachers in the divinity school, prescribed their duties,
and regulated and paid the salaries of such professors,
tutors and teachers, directed the course of instruction,
and defrayed the entire expenses connected with the
maintenance of such school out of the income arising
from its property. It was also shown the instruction im-
parted in the divinity school is the same, in nature and
character, as that contemplated by the charter of the
union and the same as was imparted when the union
maintained a separate school. The evidence does not
disclose, in detail, the agreement between the two insti-
tutions or the exact relations of the one to the other, .
but so far as the facts are disclosed it seems the union
entered into the arrangement because it offered superior
advantages in the matter of securing for its school a
greater number of students, and increased its facilities
for the discharge of its corporate duty of maintaining
and conducting the theological school contemplated by
its charter. It did not appear the property of the union,
or the income arising therefrom, was being or had been
appropriated to purposes foreign to the corporate object,
or that the union has ceased to discharge its corporate
functions.

The views of this court in respect of the validity of the
clause in the charter of the union exempting its property

from taxation are fully expressed in the following cases: *Northwestern University* v. *People ex rel.* 80 Ill. 333, and 86 id. 141; *People ex rel.* v. *Baptist Theological Union, supra.*

The judgment is affirmed.　　　　*Judgment affirmed.*