THE NORTHWESTERN UNIVERSITY, Appellee, vs. JOHN J. HANBERG, County Treasurer, Appellant.

*Opinion filed December 15, 1908.*

1. TAXES—*what does not authorize application of rule that doubt is fatal to claim of exemption.* The mere fact that a controversy has arisen over the meaning of a statute granting exemption from taxation does not authorize the application of the rule that a doubt is fatal to the claim nor relieve the court of the duty of interpreting the statute by ordinary rules of construction, but if, after the application of all rules of interpretation, a well founded doubt exists then an ambiguity occurs, which may be settled by applying the rule resolving the doubt against the exemption.

2. SAME—*tax exemption of Northwestern University exists by virtue of a contract.* The amendment of 1855 to the charter of the Northwestern University, providing that "all property, of whatever kind or description, belonging to or owned by said corporation shall be forever free from taxation for any and all purposes," is, as between such university and the State, a contract, the obligation of which cannot be impaired by subsequent legislation imposing taxes upon the property of the university.

3. SAME—*tax exemption to Northwestern University extends to all its property, whenever acquired.* The exemption from taxation granted by the amendment of 1855 to the charter of Northwestern University is a grant to the university of perpetual freedom from taxation of its property, whether such property was then owned by the university or has been subsequently acquired by it; and the fact that property conditions in the vicinity of the university have greatly changed does not have any effect to change the grant itself.

APPEAL from the Circuit Court of Cook county; the Hon. C. M. WALKER, Judge, presiding.

HARRY A. LEWIS, WILLIAM F. STRUCKMANN, and ALBERT C. WENBAN, for appellant:

The exemption clause in appellee's amended charter, providing "that all property, of whatever kind or description, belonging to or owned by said corporation shall be forever free from taxation for any and all purposes," when the rules of construction applicable to exemptions are ap-

plied, does not exempt its subsequently acquired property. *Bank* v. *Parker,* 192 U. S. 73; *Grosse* v. *People,* 218 Ill. 342; *People* v. *Soldiers' Home,* 95 id. 561; *Insurance Co.* v. *Tennessee,* 161 U. S. 174; *People* v. *Theological Union,* 171 Ill. 304; Private Laws of 1855, p. 505.

A grant of exemption from taxation, being in the nature of the renunciation of sovereignty, must be invariably construed most strictly against the grantee, and can never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require, and all doubts must be resolved in favor of the tax. 12 Am. & Eng. Ency. of Law, (2d ed.) 302; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Pearsall* v. *Railway Co.* 161 id. 646; *Railroad Co.* v. *Alsbrook,* 146 id. 279; *Bank* v. *Tennessee,* 163 id. 416; *Tucker* v. *Ferguson,* 22 Wall. 527; *Railway Co.* v. *Supervisors,* 93 U. S. 595; *In the matter of Swigert,* 119 Ill. 83; *Ford* v. *Land Co.* 164 U. S. 662.

The clause must be construed in harmony with the constitution and laws and in consonance with the policy of the State. Const. of 1848, art. 9, sec. 3; *Townsend* v. *Radcliffe,* 63 Ill. 9; *Wheeler* v. *Wheeler,* 134 id. 522; *Sanitary District* v. *Martin,* 173 id. 243; *Cemetery Ass.* v. *People,* 170 id. 377; 15 Am. & Eng. Ency. of Law, (2d ed.) 1040; *Edwards* v. *Kearzey,* 96 U. S. 595; *Railroad Co.* v. *Trustees,* 43 Ill. 303.

The clause of exemption must be construed with reference to existing circumstances and to consequences which will follow the construction, and if it is susceptible of two meanings, the one restricting and the other extending the exemption, that construction is to be adopted which works the least harm to the State. *People* v. *Theological Seminary,* 174 Ill. 177; *Bridge Co.* v. *Bridge Co.* 3 Wall. 51; *People* v. *Harrison,* 191 Ill. 257; *People* v. *Kipley,* 171 id. 44; *Hawes* v. *Chicago,* 158 id. 653; *Iuka* v. *Schlosser,* 97 Ill. App. 222; *Harrison* v. *People,* 195 Ill. 466; *People* v. *Marshall,* 1 Gilm. 672; *Bryan* v. *Buckmaster,* Breese, 408;

*People* v. *Soldiers' Home,* 95 Ill. 561; *Gormley* v. *Uthe,* 116 id. 643; *Hogan* v. *Aikin,* 181 id. 448; *People* v. *Canal Comrs.* 3 Scam. 153.

JOHN P. WILSON, and H. H. C. MILLER, for appellee:

The exemption clause in appellee's amended charter, providing "that all property, of whatever kind or description, belonging to or owned by said corporation shall be forever free from taxation for any and all purposes," exempts appellee forever from any liability or obligation to pay taxes upon such property as may be owned by it from time to time, and does not exempt forever the particular items of property which the university may have chanced to own in 1855, regardless of subsequent changes in the ownership thereof.

The rule requiring a strict construction of statutes exempting property from taxation is not a substitute for all other rules. It does not mean that whenever a controversy is or can be raised of the meaning of the statute, ambiguity occurs, which immediately and inevitably determines the interpretation of the statute. Its proper office is to help solve ambiguities when all other tests of meaning have been employed which experience has afforded. *Bank* v. *Parker,* 192 U. S. 73; *Home of the Friendless* v. *Rouse,* 8 Wall. 430; *University* v. *Rouse,* 8 id. 440.

In all the cases in which this amendment has been before the court, it has either been assumed or stated that the language of this exemption clause is clear and unambiguous, or has been treated as applying to all the property of the corporation, regardless of the date at which its ownership was acquired by the university. *University* v. *People,* 80 Ill. 333; 99 U. S. 325; *People* v. *Theological Seminary,* 174 Ill. 183; *In re Northwestern University,* 206 id. 67.

The controlling canon of construction is to adopt such a construction as will carry out the intention of the legislature in enacting the statute, having in mind the character

of the institution and the object which the legislature had in mind in granting the exemption. *Bank* v. *Parker,* 192 U. S. 73; *Home of the Friendless* v. *Rouse,* 8 Wall. 430; *Asylum* v. *New Orleans,* 105 U. S. 362.

Mr. JUSTICE DUNN delivered the opinion of the court:

On a bill filed by the appellee, the circuit court of Cook county, after a hearing on the pleadings and evidence, entered a decree perpetually enjoining the collector of Cook county from selling certain premises of the appellee under a judgment which had been rendered against them for the taxes of 1905, and from collecting, or attempting in any manner to collect, said taxes. An appeal has been taken from that decree, and the question presented is whether the premises are exempt from taxation under the fourth section of an amendment to the charter of appellee, approved February 14, 1855, which enacted "that all property, of whatever kind or description, belonging to or owned by said corporation shall be forever free from taxation for any and all purposes." Private Laws of 1855, p. 483.

That this amendment was a contract between the State and the university whose obligation could not be impaired by subsequent legislation imposing taxes upon the property of the corporation, was decided by the Supreme Court of the United States in the case of *Northwestern University* v. *People,* 99 U. S. 309, reversing the decision of this court in the same case. (80 Ill. 333.) Many years later the board of assessors of Cook county assessed certain real estate of the university for taxation, and it was sought to sustain the assessment on the ground that, the real estate having been acquired prior to the passage of the amendment to the charter, the exemption therein granted did not apply to it. This contention was overruled, and it was decided that the amendment clearly exempted from taxation all the property of the corporation acquired prior to the amendment. *In re Northwestern University,* 206 Ill. 64.

The property involved in this case was acquired in March, 1905, and the position is now taken by the appellant that the amendment does not apply to any property acquired by the corporation after the amendment. Applying the well known rule of construction in claims for exemption from taxation, that a doubt is fatal to the claim and that the exemption cannot exist by implication, only, but must be plainly and unmistakably granted, counsel argue that the amendment is reasonably capable of two constructions, the one restricting the exemption to the property owned by the corporation when the amendment was adopted, the other extending it to all property owned by the corporation at any time, and that the more restricted meaning must be adopted. But the rule of strict construction in favor of the State, just referred to, does not relieve the court of the duty of interpreting the exemption by the ordinary rules of construction and carrying out the intention of the legislature if it can be ascertained. The fact that a controversy as to the construction has arisen does not determine the interpretation of the statute. The exemption exists by virtue of a contract, which is to be construed so as to accomplish the intention of the legislature. If, after the application of all rules of interpretation for the purpose of ascertaining such intention, a well founded doubt exists, then an ambiguity occurs, which may be settled by the application of the simple rule which resolves the doubt against the grant. But the possibility of a doubt is not sufficient. It is out of such possibilities that controversies arise, and it is the duty of courts to ascertain by judicial interpretation, not whether a doubt may be asserted, but whether any ambiguity really exists. *Citizens' Bank* v. *Parker,* 192 U. S. 73; *Home of the Friendless* v. *Rouse,* 8 Wall. 430; *Washington University* v. *Rouse,* id. 439.

It is fairly to be implied from the language of the Supreme Court of the United States in the case of *Northwestern University* v. *People, supra,* that the benefit of the

exemption was extended to property acquired after the passage of the amendment. The court said (p. 322): "It is possible if that question had been fully investigated and all the facts necessary to decide it were before the court, it might not appear that all the lands subjected to taxation by the judgment of the Supreme Court were bought after the date of the amended charter or donated on the faith of that exemption. But it does appear by a stipulation made for that purpose, that since the granting of said amended charter the corporation has expended in the erection and purchase of buildings, apparatus and other facilities and appliances for education and for the promotion of the objects stated in and contemplated by the act of incorporation, over $200,000 realized from donations and the sale of lots and land, and has built up a university, with several departments of learning, in which more than five hundred students are taught the higher branches of learning. It is, perhaps, a fair inference from this statement, and in deference to the holding of the Supreme Court that there was such acceptance of the act of 1855 and such investments made on the faith of it, that at least some portion of the property now in question is protected by contract, if the exemption clause lawfully covers it. It will readily be conceded that the language of the fourth section of the act of 1855 is broad enough for that purpose,"—that is, the language is broad enough to cover investments made since the amendment of 1855.

When the amendment granting the exemption was passed, the university owned less than $40,000 worth of real estate. The exemption seems not to have been questioned until 1873, when it was attacked on the ground of its violating the constitution of 1848. After the decision of that question, as above mentioned, no attack was made on the exemption for more than twenty years. Its constitutionality was then again questioned, and it was insisted that in any event the exemption could not apply to prop-

erty owned at the time it was granted. This contention being overruled, as we have seen, it is now insisted, by a complete change of front, that the exemption could not apply to subsequently acquired property. The language is broad enough for that purpose. The object intended to be accomplished was the encouragement of the establishment of a university by granting to it perpetual freedom from taxation of its property. It was not intended that the exemption should be granted to the property but to the university; not that the property then owned by the university should be forever free from taxation, no matter into whose ownership it should thereafter come, but that the university should be forever free from taxation of its property.

It is urged by the appellant that the property involved in this case constitutes about one-eighteenth of the village of Wilmette; that its exemption from taxation will cast upon the other property of that village an increased burden of taxation; that by the acquisition of more property the university could still further increase the burden of taxation so as to make the holding of property in the village impracticable; that by the acquisition of two thousand acres,—the limit which its charter imposes upon its holding of real estate,—in the heart of the city of Chicago, exempt from taxation, a condition of enormous injustice and absurdity would be brought about, and that such special privilege imposes a burden and inflicts a wrong upon the community which the legislature could not have intended. The changed conditions with which the university is now surrounded cannot affect the meaning of the amendment passed in 1855. Doubtless the legislature did not foresee the enormous growth of the city of Chicago, the increase in the value of property, the growth in the wealth, and the work, the wants and necessities of the university. The university was not then regarded as an incubus on the community. Schools of higher learning were scarce, and the legislature which granted this exemption to Northwestern

University granted to various other schools perpetual exemption from taxation of all the property they should ever acquire. (Private Laws of 1855, pp. 380, 384, 503, 511, 513.) Even now the legislature appropriates yearly for the University of Illinois, from money raised by taxation, sums vastly greater than those released to the Northwestern University through this exemption. Had the legislature of 1855 foreseen the present situation we cannot say that they would not have granted the exemption of the after-acquired property of the university from taxation, and we certainly cannot say, because of the present situation, they did not do so. In granting to the corporation perpetual freedom from taxation they exempted it from taxation on all property owned by it, whether acquired before or after the grant.

A claim that the exemption relied upon had been adjudicated in favor of the appellee by the county court of Cook county was set up in the amended bill and relied upon in the argument, but since our view of the meaning of the amendment to the charter disposes of the whole question we have not discussed this claim.

The decree is affirmed.                    *Decree affirmed.*